IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

STEVEN LAWRENCE CURRIE,          )
                                 )
            Petitioner,          )
                                 )
      v.                         )    1:08CV252
                                 )    1:07CR87-2
UNITED STATES OF AMERICA,        )
                                 )
            Respondent.          )

### MEMORANDUM OPINION AND RECOMMENDATION
### OF MAGISTRATE JUDGE ELIASON

Petitioner Steven Lawrence Currie, a federal prisoner, has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Docket No. 37.)[1] Petitioner was originally indicted for conspiracy to distribute cocaine hydrochloride in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), distribution of cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and possession of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Docket No. 1.) Petitioner later pled guilty to the conspiracy charge and the firearm charge. (Docket Nos. 23, 24.) He was sentenced to 120 months of imprisonment for the conspiracy charge and 60 consecutive months of imprisonment for the firearm charge. (Docket No. 33.)

Petitioner did not file a direct appeal, but instead brought his motion under § 2255. In that motion, he raised a single claim for relief in which he claimed that his attorney did not file an

---

[1]This and all further cites to the record are to the criminal case.

appeal even though Petitioner instructed him to do so.  Following briefing by the parties, the Court held an evidentiary hearing on September 18, 2008.  Attorney Brian Aus represented Petitioner, while Assistant United States Attorney Sandra Hairston represented Respondent.  Petitioner testified on his own behalf. His former attorney, Milton Bays Shoaf also testified.  Petitioner's motion is now before the Court for findings and a recommended ruling.

## **HEARING TESTIMONY**

Petitioner testified that he pled guilty after consulting with Shoaf, but that he had some doubts about his firearm conviction. (Docket No. 49 at 7.)  He was concerned because the charge was based on a gun that was in his car at the time that he conducted a drug transaction.  Petitioner left the gun in his car, got into a separate car, and conducted the transaction.  Petitioner felt that the gun was not possessed in furtherance of the drug transaction. He expressed these concerns to Shoaf.  (Id. at 14-16.)  Shoaf conducted research and told Petitioner that the case law did not support Petitioner's beliefs.  (Id. at 23-24.)  In the end, Petitioner chose to plead guilty and did not tell the judge conducting the plea hearing about his concerns or ask any questions about those matters.  (Id. at 26-27.)

Around the same time that Petitioner pled guilty, he also began to supply Shoaf with information which he hoped would lead to a sentence reduction for substantial assistance.  The information was supplied through Petitioner's girlfriend via facsimile or

-2-

Case 1:07-cr-00087-NCT   Document 50   Filed 12/31/08   Page 2 of 10

email.  (Id. at 8-9.)  It did not result in a substantial assistance reduction for Petitioner.

Petitioner also spoke with Shoaf about the Presentence Report prior to sentencing, but did not discuss the possibility of an appeal.  He testified that he first discussed an appeal with Shoaf on the date of his sentencing, September 6, 2007.  (Id. at 10.) Petitioner testified that he spoke to Shoaf "off pretty much to the side" in the courtroom after sentencing and that he asked Shoaf to appeal.  He claims that Shoaf stated he would come and speak with Petitioner in jail.  They did not discuss an appeal further at that time.  (Id. at 12-13.)

Shoaf did not come to visit Petitioner in jail.  Instead, he sent Petitioner a letter in October of 2007.  It included a copy of the judgment in the case and informed Petitioner that he had ten days to file an appeal.  It also stated that Shoaf felt there were no grounds for an appeal.  (Id. at 17.)  Petitioner testified that he then telephoned Shoaf and told him that he wanted to file an appeal.  He testified that they talked about other subjects as well, including substantial assistance.  He believed that this conversation occurred on October 13 or 14, 2007, but agreed that the fifteenth was also possible.  Shoaf again told him that there were no grounds for an appeal.  (Id. at 18-19.)

Petitioner testified that he did not hear from Shoaf again. However, in January of 2008, Petitioner sent Shoaf a letter aimed making a further attempt at a sentence reduction based on substantial assistance.  The letter did not mention any appeal.

-3-

Petitioner testified that he believed at that time that an appeal had been filed. (Id. at 19-20.) His alleged request for an appeal was never put into writing. (Id. at 21-22.) Also, although he could and did write Shoaf about other matters, he never wrote him to ask about an appeal. (Id. at 30.)

Shoaf testified largely in agreement with Petitioner, but they did differ on certain key points. He agreed that Petitioner had early concerns about his guilt on the firearm charge. Shoaf researched the issue and found authority indicating that Petitioner was guilty even though he left his gun in his car while conducting the actual drug transaction. (Docket No. 33-34.) He testified that after he informed Petitioner of the state of the law, Petitioner never raised the issue again. (Id. at 35.)

Shoaf also agreed that he began working with Petitioner to develop grounds for a substantial assistance reduction. He received information from Petitioner's girlfriend and passed the information to the government prior to Petitioner's sentencing. (Id. at 38-39.)

Following sentencing, Shoaf told Petitioner that he would be in touch once he got a copy of the judgment in the case. Petitioner did not mention an appeal at that time. (Id. at 45.) Then, in October of 2007, Shoaf did send Petitioner a copy of the judgment along with a letter advising Petitioner that he had ten days to appeal if he wished to do so. It stated that it was Shoaf's opinion that there were no grounds for an appeal. (Id. at 39.) Shoaf's file showed correspondence with Petitioner's

-4-

girlfriend in December of 2007 and with Petitioner in January of 2008. That correspondence dealt with continuing substantial assistance efforts. (Id. at 40-41.) Shoaf also agreed that he spoke with Petitioner by telephone on October 15, 2008. However, he testified that Petitioner did not mention any appeal, but that they talked about substantial assistance. (Id. at 43.) Notes attached to a copy of the October letter from Shoaf reflect a telephone conversation with Petitioner on the fifteenth, but show only references to the substantial assistance efforts, not any appeal. (Docket No. 42, Ex. A., Attach. 7.) According to Shoaf, Petitioner never once asked for an appeal at any time. He maintained that he would have filed one had Petitioner asked. (Docket No. 49 at 44-45.)

## ANALYSIS

In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. See Strickland v. Washington, 466 U.S. 668 (1984). Petitioner is not entitled to a hearing based upon unsupported, conclusory allegations. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) (in order to obtain an evidentiary hearing a habeas petitioner must come forward with some evidence that the claim might have merit), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999). A petitioner bears the burden of affirmatively showing deficient performance. See Spencer v. Murray, 18 F.3d 229, 233

(4th Cir. 1994). The Supreme Court has held that the dual performance and prejudice inquiry of Strickland provides the proper framework for analyzing a claim that counsel was ineffective for failing to file a notice of appeal. See Roe v. Flores-Ortega, 528 U.S. 470 (2000). The Roe Court reaffirmed that a defense attorney's performance falls below an objectively reasonable standard if he disregards the defendant's specific instructions to file a notice of appeal which defendant wants at the time and to which the defendant has a right. Id. at 477. However, if a defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, and if counsel consulted with the defendant about an appeal, counsel performs unreasonably only by failing to follow the defendant's express instructions with respect to an appeal. See id. at 478.

Here, both Petitioner and Shoaf agree that Petitioner initially had problems with the basis for the firearm charge, but that Shoaf conducted research which revealed that the basis was proper. Petitioner then pled guilty and was sentenced to 180 months of imprisonment. They also agree that from sometime after Petitioner's plea hearing, until at least January of 2008, they continued to work together on gaining a substantial assistance reduction for Petitioner.

The only material issue of disputed fact which needs to be resolved is whether or not Petitioner ever asked Shoaf to file an appeal. As set out above, they have testified directly opposite on this point. Petitioner claims that he asked Shoaf to appeal both

-6-

in person immediately after sentencing, and again via telephone after Shoaf sent him the judgment and letter in October of 2007. Shoaf on the other hand flatly denies that Petitioner ever asked him to file an appeal.

The Court concludes that Shoaf's testimony on this issue is more credible than Petitioner's. There are multiple reasons for this conclusion. First, Petitioner's claim is that his issue on appeal would have been whether or not the facts of the case supported his firearm charge. Shoaf testified that any issues Petitioner had regarding that charge were laid to rest by his research and his discussions with Petitioner prior to Petitioner's guilty plea. The record supports Shoaf on this point.

Petitioner was subjected to an extensive plea colloquy on a number of issues, including his guilt on the firearm charge. Petitioner was told at the beginning of the colloquy that it was very difficult to withdraw a guilty plea and that it was, therefore, important to ask for a trial at that time if he did not want to plead guilty. He was also told to speak up if he disagreed with anything his attorney said during the colloquy. (Docket No. 36 at 3-4.) The judge then questioned Shoaf. Shoaf stated that he had researched the case, explained it to Petitioner, and that Petitioner understood the case. He also stated that he had told Petitioner that he could have a trial any time he wished up until the plea was accepted. (Id. at 8, 10.)

Petitioner was then placed under oath and questioned. He first acknowledged that he had no disagreement with Shoaf's

statements. (Id. at 12-13.) He was later advised of the elements of his charges. He agreed that he understood those elements and confirmed that he had no questions for the judge. (Id. at 20-21.) When asked if he had any questions, Petitioner sought to confer with Shoaf and was allowed to do so. (Id. at 20.) After the conference the judge conducting the colloquy assured Petitioner that it was fine to have questions and then asked whether he had any questions. Petitioner replied that he did not. (Id. at 20-21.) The colloquy continued and Petitioner never questioned his guilt on the firearm charge. This record supports Shoaf's contention that, whatever initial doubts Petitioner may have had about the firearm charge, they were resolved prior to the entry of his guilty plea. He would have had no reason to appeal.

The correspondence between Petitioner and Shoaf also supports Shoaf's testimony that Petitioner never asked for an appeal. Shoaf's October 2007 letter does not mention any prior request for an appeal, nor does it appear based on the knowledge that there was one. Further, Petitioner had written communication with Shoaf, mainly through Petitioner's girlfriend, on a number of occasions both prior to and following sentencing. Not once in any of these communications did Petitioner mention either a lingering doubt concerning the firearm conviction or an appeal associated with that issue. Instead, the communications dealt only with substantial assistance. The nature of the communications reveals a defendant and attorney committed to pursuing a strategy of substantial assistance without any lingering doubts as to guilt or any desire

to investigate an opposite strategy of direct appeal.  It is simply not credible that, had Petitioner's thought process been as he testified at the evidentiary hearing, he would have engaged in this much written communication with Shoaf and not have mentioned an appeal or at least brought up the issue on which he supposedly based his request for an appeal.  Instead, his first written mention of an appeal was in his § 2255 motion in April of 2008-- after his attempts at substantial assistance failed to bear fruit and without any attempt to even question Shoaf concerning the appeal Petitioner allegedly believed was pending as late as January of 2008.  All written communication between Petitioner and Shoaf that occurred during the time when an appeal might have been filed or pending shows that no appeal was requested or anticipated.

Overall, the record does not show that Petitioner had lingering doubts regarding his guilt on the firearm charge or that he asked Shoaf to file a direct appeal based on this issue.  Instead, it reveals that Petitioner had initial doubts, that they were resolved by the time he pled guilty, and that his energy thereafter was spent trying to obtain a substantial assistance reduction.  His claim that he ever asked Shoaf to file a direct appeal is not credible.  Therefore, his § 2255 motion should be denied.

-9-

Case 1:07-cr-00087-NCT   Document 50   Filed 12/31/08   Page 9 of 10

**IT IS THEREFORE RECOMMENDED** that Petitioner's motion to vacate, set aside, or correct sentence (Docket No. 37) be **DENIED** and that Judgment be entered dismissing this action.

```
            /s/ Russell A. Eliason
      ────────────────────────────────
      United States Magistrate Judge
```

December 31, 2008